**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| Marlaina A. Napoli-Bosse and Brandy Smith, *on behalf of themselves and all others similarly situated*, <br><br> Plaintiffs, <br><br> vs. <br><br> General Motors LLC, <br><br> Defendant. | : <br> : <br> : <br> : <br> : <br> : <br> : **Civil Action No. _____** <br> : <br> : **CLASS ACTION COMPLAINT** <br> : <br> : <br> : <br> : <br> : |

Plaintiffs, Marlaina A. Napoli-Bosse and Brandy Smith, by undersigned counsel, bring the following complaint against General Motors LLC, and allege, on their own behalf and on behalf of all those similarly situated, as follows:

## INTRODUCTION

1.      Plaintiffs Marlaina A. Napoli-Bosse ("Napoli-Bosse") and Brandy Smith ("Smith," and together with Napoli-Bosse, "Plaintiffs") bring this lawsuit on their own behalf and on behalf of a proposed class of past and present owners and lessees of defective 2017-2018 GMC Acadia vehicles (the "Class Vehicles") designed, manufactured, marketed, distributed, sold, warranted, and serviced by General Motors LLC ("GM" or "Defendant").

2.      The Class Vehicles contain a defect whereby the vehicle fails to detect that the driver placed the car in "Park" and prevents the vehicle driver from shutting off and locking the vehicle.  Instead, the Class Vehicles display a "Shift to Park" message on the instrument cluster even though the gear shifter is in "Park" (hereinafter the "Shifter Defect").

3.      As a result of this Shifter Defect, Plaintiffs and members of the Class are unable to shut off their vehicles and, to avoid battery discharge, are forced to resort to all sort of gimmicks to get their vehicles to detect that the shift lever is in fact in "Park."

4.    GM does not know the root cause of this defect and has no fix.

5.    GM's conduct is in breach of contract, in breach of express and implied warranties, and in breach of the Magnuson-Moss Warrant Act, 15 U.S.C. § 2301, *et seq.* (the "MMWA").

6.    GM has and will continue to benefit from its unlawful conduct – by selling and leasing more vehicles, at a higher price, and avoiding warranty obligations – while consumers are harmed at the point of sale as their vehicles suffer from the Shifter Defect which GM cannot fix.  Had Plaintiffs and other proposed class members known about the defect at the time of purchase or lease, they would not have bought or leased the Class Vehicles, or would have paid substantially less for them.

7.    To remedy GM's unlawful conduct, Plaintiffs, on behalf of proposed class members, seek damages and restitution from GM, as well as notification to class members about the defect with the vehicles' shifters.

## **PARTIES**

8.    Plaintiff Marlaina A. Napoli-Bosse is, and at all times mentioned herein was, an adult individual residing in Southington, Connecticut.

9.    Plaintiff Brandy Smith is, and at all times mentioned herein was, an adult individual residing in Diboll, Texas.

10.    Defendant General Motors LLC is a Delaware limited liability company with its principle place of business located at 300 Renaissance Center, Detroit, Michigan.   General Motors LLC is registered to do business in the State of Connecticut.

11.    General Motors LLC, through its various entities, designs, manufactures, markets, distributes, services, repairs, sells, and leases passenger vehicles, including the Class

Vehicles, nationwide and in Connecticut.  General Motors LLC is the warrantor and distributor of the Class Vehicles in the United States.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one Plaintiff and GM are citizens of different states.

13.    GM, through its business of distributing, selling, and leasing the Class Vehicles, has established sufficient contacts in this district such that personal jurisdiction is appropriate. Defendant is deemed to reside in this district pursuant to 28 U.S.C. § 1391(a).

14.    In addition, venue is proper in this District pursuant to 28 U.S.C. § 1391(b) as Plaintiff Napoli-Bosse leased her vehicle, which is the subject of this action, in this district and presented it for repair in this district.  Thus, substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

## STATEMENT OF FACTS

15.    In May of 2016 GM began sales of a redesigned GMC Acadia vehicle and has since sold hundreds of thousands of Class Vehicles nationwide for model year 2017 and 2018.

16.    All Class Vehicles suffer from a defect with their transmission shifter which intermittingly causes Class Vehicles to not enter park mode, displays a "Shift to Park" message on the instrument cluster, prevents the vehicle driver from shutting off and locking the vehicle, even though the vehicle's shift lever is in "Park."

17.    Such Shifter Defect substantially impairs the value, safety, and use of the Class Vehicles to the Plaintiffs and members of the Class, as they are unable to shut off their

vehicles, are unable to lock their vehicles, and, to avoid battery discharge and to shut the vehicle off, are forced to resort to all sort of gimmicks to get their vehicles to detect that the shift lever is in fact in "Park."

18.    Indeed, both Plaintiffs have repeatedly found themselves stranded inside their vehicles at home, at work, at school, at children's day care, and at various other places away from home, unable to shut their vehicles off.

19.    To get their vehicles to detect that the shifter is in fact in "Park," Plaintiffs were forced to repeatedly wiggle the shifter, shift it through its gears, and start and shut off the engine.

20.    Plaintiff Napoli-Bosse complained both to GM and to GM's authorized dealership of the Shifter Defect, but was told that while GM was aware of the problem it had no fix.

21.    Plaintiff Smith complained at least half a dozen times to GM's authorized dealership of the Shifter Defect, but was repeatedly told that since the Shifter Defect did not manifest itself at the time she complained, the dealership would attempt no repairs.

22.    Plaintiffs' experiences are not unique; numerous other consumers have complained about the same issue.  For example, carcomplaints.com is a website that re-publishes NHTSA complaints. The site includes the following complaints:[1]

- Additionally, the car dashboard gives out commands for putting the car in park after it is stationary. (posted on August 24, 2018 by a driver from Kernersville, NC);

- When the car is parked on a flat surface (inside the garage, parking garage, parking lot), the car will display "shift to park" when it is already in park. The accessories stay on until the driver is able to get the car's computer to notice the car is in park. (Posted on August 18, 2018 by a driver from Aurora, CO);

---

[1] *Available at* https://www.carcomplaints.com/GMC/Acadia/2017/drivetrain/power_train.shtml *and* https://www.carcomplaints.com/GMC/Acadia/2018/drivetrain/power_train.shtml (last visited October 9, 2018).

- Placed the vehicle in park, it was stationary and it rolled forward. Message in the info center said "shift to park". I was parking in a mall parking lot.this has occurred 5 times. I can push the gearshift back and forth and then it can be turned off and the message will disappear. I took it to the dealership and was told they are waiting on GM to see what can be done. (Posted on July 5, 2018 by a driver from Prescott, AR);

- When the vehicle is in park and you try to turn it off with the start/stop button an on dash error code of "shift to park" appears even though the vehicle is clearly in park. You are not able to turn the vehicle off. I took the vehicle in for service on 6/4/18 and was told that GM is aware of the issue however their engineers have not found a solution. This currently is forcing me restart the engine, put my car in reverse, shift back in drive, try re parking and turning off again repeating the process until it eventually turns off. I do not know if my car is truly in gear or not. I'm afraid that it might cause a dangerous situation.  (Posted on June 3, 2018 by a driver from Portage, MI);

- A message shift to park kept appearing when the car was in park and shut off. (Posted on May 21, 2018 by a driver from Jacksonville, FL);

- When you put the shifter in park it does not recognize & cabin alarm starts to beep. The vehicle will also leave its headlights on overnight & drain your battery. Took to dealer and they [couldn't] do anything about it. It's been 2 weeks and no letter of resolution from manufacturer as the dealer said. (Posted on June 19, 2018 by a driver from Cody, WY).

23.     In addition, about two dozen consumers posted their complaints about the Shifter Defect on GMC Acadia enthusiast website acadiaforum.net, which Defendant or its agents monitor.[2]  One driver posted that his 2017 Acadia has been suffering from the same Shifter Defect "sporadically over the past 2 weeks and now it does it every day," that he took it to dealer only to be told that there is no fix, that "GM engineering is working on it," and that to get the "shift to park" warning to cease he could hold his "foot on the brake pedal and wiggl[e] the shifter handle then release both every few seconds ... [t]hen the message goes away 5-10 seconds later."[3]

---

[2] *Available at* https://www.acadiaforum.net/8-gmc-acadia/29417-2017-shift-park-message.html (last visited October 9, 2018).

[3] Available at https://www.acadiaforum.net/8-gmc-acadia/29417-2017-shift-park-message.html (last visited October 9, 2018).

24.     The Shifter Defect is inherent in all Class Vehicles, and the Shifter Defect is the same for all Class Vehicles.

25.     GM is well aware of the defect.  On May 29, 2018, GM first issued Technical Service Bulletin ("TSB") No. PIT5616A.  The TSB is titled "VEHICLE DISPLAYS SHIFT TO PARK MESSAGE ON DIC WHEN IN PARK. VEHICLE MAY NOT SHUT OFF WHEN PUT IN PARK OR MAY NOT START" and warns that that due to an "unknown" cause the Class Vehicles may exhibit the afore-mentioned defect. (TSB No. PIT5616A is attached hereto as Exhibit A).

26.     TSB No. PIT5616A states "Engineering is still investigating the root cause."

27.     Each Class Vehicle sale or lease is accompanied with GM's 3-year / 36,000-mile New Vehicle Limited Warranty.

28.     Prior to purchasing or leasing their vehicles, Plaintiffs relied upon GM's representations of a New Vehicle Limited Warranty ("NVLW") that accompanied the sale of the vehicle, and such representations were material to Plaintiffs' decision to purchase and lease their vehicles.

29.     The terms of GM's NVLW are contained in the warranty booklet that Plaintiffs and all class members received at the time they purchased or leased the Class Vehicles.

30.     GM's warranty booklet sets forth the terms of its New Vehicle Limited Warranty as follows:

GMC will provide for repairs to the vehicle during the warranty period in accordance with the following terms, conditions, and limitations.

**Warranty Applies**

This warranty is for GMC vehicles registered in the United States and normally operated in the United States and is provided to the original and any subsequent owners of the vehicle during the warranty period.

**Repairs Covered**

The warranty covers repairs to correct any vehicle defect, not slight noise, vibrations, or other normal characteristics of the vehicle due to materials or workmanship occurring during the warranty period. Needed repairs will be performed using new, remanufactured, or refurbished parts.

\* \* \*

**Obtaining Repairs**

To obtain warranty repairs, take the vehicle to a GMC dealer facility within the warranty period and request the needed repairs. Reasonable time must be allowed for the dealer to perform necessary repairs.

**A.  <u>Plaintiff Marlaina A. Napoli-Bosse</u>**

31.     On February 27, 2017, Napoli-Bosse leased a new 2017 GMC Acadia, Vehicle Identification Number 1GKKNXLS2HZ233440 (hereafter, the "Napoli-Bosse Vehicle") from Stephen Cadillac GMC, Inc., in Bristol, Connecticut, an authorized dealership of the Defendant (hereafter "Stephen GMC").

32.     Stephen GMC assured Napoli-Bosse that it was accompanied by GM's New Vehicle Limited Warranty and was itself free from defects of workmanship. Although Napoli-Bosse initially wanted to buy out a 2014 GMC Acadia at the conclusion of that lease, Stephen GMC convinced her to lease a new 2017 GMC Acadia claiming it had more safety features, better gas mileage, and was overall a better vehicle.

33.     Napoli-Bosse agreed to lease a new 2017 GMC Acadia as she needed a reliable vehicle to get to work and to drive her children.

34.     Despite these assurances, the Napoli-Bosse Vehicle is neither safe nor reliable.

35.     On or about July 20, 2018, Napoli-Bosse drove her child to day care.  As she attempted to shut off her car, the "Shift to Park" message on the vehicle's instrument cluster appeared (*see* <u>Illustration 1</u>) even though the vehicle's shift lever was in the "Park" position, preventing Napoli-Bosse from shutting off her vehicle.



Illustration 1

36.     Unable to shut off her car and not willing to be late for day care, Napoli-Bosse left her vehicle on and unlocked.

37.     Because of this defect, Napoli-Bosse took her vehicle to Stephen GMC on or about July 20, 2018, to complain and for a repair.

38.     Stephen GMC acknowledged the Shifter Defect in the Napoli-Bosse Vehicle but (1) advised there was no fix available and (2) did not attempt to make any repair.

39.     In addition, on or about July 20, 2018, Napoli-Bosse called GM and complained about the Shifter Defect.  GM representative responded that GM was working on a solution but GM had no solution and no timetable as to when solution would be available.

40.     Concerned about being stranded in her vehicle, Napoli-Bosse refrained from driving her vehicle for several weeks and has not resumed driving Napoli-Bosse Vehicle until late August of 2018.

41.     Since Napoli-Bosse  resumed driving her vehicle in late August of 2018, Napoli-Bosse experienced the Shifter Defect on numerous occasions and found herself

stranded inside her vehicle at home, at work, at school, and at various other places away from home, unable to shut her vehicle off.

42.    To shut her vehicle off, Napoli-Bosse was forced to continuously wiggle the shifter, repeatedly move the shifter from "Park" to other gear positions and back to "Park," and repeatedly start the vehicle's engine and shut it off until her vehicle would recognize it was in "Park."

43.    On one occasion, Napoli-Bosse was unable to shut her vehicle while at home and sent her children with her husband home while she sat in the car fiddling with the gear shifter.

44.    To date, the Napoli-Bosse Vehicle has not been fixed and continues to suffer from the same defect.

### B. Plaintiff Brandy Smith

45.    On February 28, 2017, Plaintiff Smith purchased a new 2017 GMC Acadia, Vehicle Identification Number 1GKKNKLA4HZ209019 (hereafter the "Smith Vehicle") from Wright Buick GMC in Lufkin, Texas, an authorized dealership of the Defendant (hereafter, "Wright GMC").

46.    Wright GMC assured Smith that the vehicle was accompanied GM's New Vehicle Limited Warranty and was itself free from defects of workmanship.  She was told the Smith Vehicle was a brand new car, a newer model, and that there should be no problems and nothing wrong with it.  Wright GMC further assured Smith this was a very reliable car.

47.    Despite these assurances, the vehicle is neither problem-free nor reliable.  On or about April 1, 2017, Smith experienced the Shifter Defect.

48.    Few days later, on or about April 3, 2017, Smith complained about the Shifter Defect to Wright GMC.

49.     Wright GMC, however, failed and/or refused to undertake any repairs since the Shifter Defect failed to manifest itself at the time Smith complained.

50.     Since that first complaint Smith continued to experience the Shifter Defect.

51.     Smith has repeatedly found herself stranded inside her vehicle at home, at work, when picking up children at school, and at various other places away from home, unable to shut her vehicles off.

52.     On December 9, 2017, Smith took her daughter to the hospital but was delayed at the parking lot due to the Shifter Defect, unable to shut off her car.

53.     Similarly, in early 2018 Smith used her short work lunch-break to go to Wal-Mart, but found herself unable to shut off her car due to the Shifter Defect.

54.     To get her vehicle to detect that the shifter was in fact in the "Park" position, Smith was forced to repeatedly wiggle the shifter, shift it through its gears, or start the engine, drive her vehicle a bit forward, and then shut off the engine.

55.     Starting April of 2017, Smith took her vehicle at least half a dozen times to Wright GMC to complain and to get a repair.

56.     Wright GMC, however, failed and/or refused to undertake any repairs each and every time since the Shifter Defect failed to manifest itself at the time Smith complained.

57.     To date, the Smith Vehicle continues to suffer from the same defect.

## CLASS ACTION ALLEGATIONS

### A.  The Class

58.     Plaintiffs bring this case as a class action on behalf of a nationwide class pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3).

**Nationwide Class:** All persons or entities in the United States who bought or leased a 2017-2018 GMC Acadia (the "Nationwide Class").

59.     Pursuant to Fed. R. Civ. P. 23(c)(5), Plaintiffs seek to represent the following state classes only in the event that the Court declines to certify the Nationwide Class:

**Connecticut Class:** All persons or entities in the state of Connecticut who bought or leased a 2017-2018 GMC Acadia (the "Connecticut Sub-Class").

**Texas Class:** All persons or entities in the state of Texas who bought or leased a 2017-2018 GMC Acadia (the "Texas Sub-Class").

60.     Defendant and its employees or agents are excluded from the Class.

## B.  Numerosity

61.     Upon information and belief, each of the Classes are so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that hundreds of thousands of Class Vehicles have been sold and leased in each of the States that are the subject of the Classes.

## C.  Common Questions of Law and Fact

62.     There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members.  These questions include:

a.      Whether the Class Vehicles were sold with defective transmission gear shifter that causes the vehicle to intermittently display a "Shift to Park" message even though the shifter is in "Park" position;

b.      Whether the Class Vehicles were sold with defective gear shifter that prevents such vehicles from shutting off and being locked;

c.      Whether Defendant knew about the above-described defect but failed to disclose the problem and its consequences to its customers;

d.    Whether  Defendant breached contract when it failed to repair the defect with the transmission gear shifter;

e.    Whether  Defendant breached express warranties and MMWA when it failed to repair the defect with the transmission gear shifter;

f.    Whether  Defendant breached implied warranties and MMWA when it sold vehicles that contain defect with its transmission gear shifter;

g.    Whether Defendant is liable for damages, and the amount of such damages;

h.    Whether Defendant should be required to disclose the existence of the defect; and

i.    Whether Plaintiff and class members are entitled to equitable relief including injunctive relief.

**D.  Typicality**

63.    The Plaintiffs' claims are typical of the claims of the Classes since Plaintiffs leased and purchased defective Class Vehicles, as did each member of the Classes. Furthermore, Plaintiffs and all members of the Classes sustained economic injuries arising out of Defendant's wrongful conduct.  Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

**E.  Protecting the Interests of the Class Members**

64.    Plaintiffs will fairly and adequately protect the interests of the Class and have retained counsel experienced in handling class actions and claims involving unlawful business practices.  Neither Plaintiff nor their counsel has any interest which might cause them not to vigorously pursue this action.

**F.**   **Proceeding Via Class Action is Superior and Advisable**

65.     A class action is the superior method for the fair and efficient adjudication of this controversy.  The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.  It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them.  Even if the members of the Class could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court.  Upon information and belief, members of the Classes can be readily identified and notified based on, inter alia, Defendant's vehicle identification numbers, warranty claims, registration records, and database of complaints.

66.     Defendant has acted, and refused to act, on grounds generally applicable to the Classes, thereby making appropriate final equitable relief with respect to the Classes as a whole.

### FIRST CAUSE OF ACTION
**Breach of Contract**
**(On Behalf of the Nationwide Class or, in the Alternative,**
**the Connecticut and Texas Sub-Classes)**

67.     The Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

68.     In connection with the sale or lease of the Class Vehicles, the Plaintiffs and class member entered into a written contract with the Defendant under which the Defendant agreed to repair original components found to be defective in material or workmanship under normal use and maintenance, including the transmission and its components.

69.     Plaintiffs and class members relied on Defendant's promise to repair the Class Vehicles within a reasonable time and without charge to the Plaintiffs and class members when they agreed to purchase or lease the Class Vehicles and Defendant's promise to repair was part of the basis of the bargain.

70.     Plaintiffs and class members submitted their Vehicles for the Shifter Defect repair as referenced herein.  Defendant failed to comply with the terms of such written contract it provided to the Plaintiffs and each Class member, by failing and/or refusing to repair the Shifter Defect as promised.

71.     Plaintiffs and class members have given Defendant reasonable opportunities to cure said defect, but Defendant has been unable and/or has refused to do so within a reasonable time.

72.     Defendant's breach of the contract has resulted in material damages to Plaintiffs and the members of the Class.

73.     As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the contract, Plaintiffs and Class members have suffered actual and consequential damages.  Such damages include, but are not limited to, the loss of the use and enjoyment of their vehicles, and a diminution in the value of the vehicles containing the defects identified herein.

## SECOND CAUSE OF ACTION
**Breach of Warranty Pursuant to the Magnuson-Moss Warranty Act,**
**15 U.S.C. §2301, *et seq.***
**(On Behalf of the Nationwide Class or, in the Alternative,**
**the Connecticut and Texas Sub-Classes)**

74.    The Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

75.    Each Plaintiff and each class member is a "consumer" as defined in 15 U.S.C. § 2301(3).

76.    Defendant is a "supplier" and "warrantor" as defined in 15 U.S.C. § 2301(4) and (5).

77.    The Class Vehicles are each a "consumer product" as defined in 15 U.S.C. § 2301(6).  15 U.S.C. § 2310(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with the written and implied warranties.

78.    15 U.S.C. § 2304(a)(1) requires Defendant, as a warrantor, to remedy any defect, malfunction or nonconformance of the Class Vehicles within a reasonable time and without charge to the Plaintiffs and Class members.

79.    The Defendant's failure and/or refusal to repair the Class Vehicles' Shifter Defect within the applicable warranty period constitutes a breach of the written and implied warranties applicable to the Class Vehicles.

80.    Despite repeated demands, Defendant has failed to remedy the Class Vehicles' defects within a reasonable time, and/or a reasonable number of attempts, thereby breaching the written and implied warranties applicable to the Class Vehicles.

81.    As a result of Defendant's breaches of the written and implied warranties, and Defendant's failure to remedy the same within a reasonable time, Plaintiffs and class members have suffered damages.

### THIRD CAUSE OF ACTION
**Breach of Express Warranty under Conn. Gen. Stat. Ann. § 42a-2-313 and
Tex. Bus. & Com. Code Ann. § 2.313
(On Behalf of the Nationwide Class or, in the Alternative,
the Connecticut and Texas Sub-Classes)**

82.     Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

83.     In connection with the sale or lease of the Class Vehicles to the Plaintiffs and Class members, Defendant provided the Plaintiffs and class members with a New Vehicle Limited Warranty, under which it agreed to repair original components found to be defective in material or workmanship under normal use and maintenance, including the transmission and its components.

84.     Plaintiffs and Class members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles and Defendant's warranties were part of the basis of the bargain.

85.     Plaintiffs and Class members submitted their Vehicles for warranty repairs as referenced herein.  Defendant failed to comply with the terms of the express written warranty provided to each Class member, by failing and/or refusing to repair the subject defect under the vehicle's warranty as described herein.

86.     Plaintiffs and Class members have given Defendant reasonable opportunities to cure said defect, but Defendant has been unable and/or has refused to do so within a reasonable time.

87.     As a result of said nonconformities, Plaintiffs and Class members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, comfortable, and efficient transportation.

88.    The Plaintiffs and Class members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiffs' and Class members' acceptance of the Class Vehicles.

89.    The Plaintiffs and Class members would not have purchased or leased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that Class Vehicles contained the Shifter Defect.

90.    As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the express warranties, Plaintiffs and Class members have suffered actual and consequential damages.  Such damages include, but are not limited to, the loss of the use and enjoyment of their vehicles, and a diminution in the value of the vehicles containing the defects identified herein.

**FOURTH CAUSE OF ACTION**
**Breach of Implied Warranty Pursuant Gen. Stat. Ann. § 42a-2-314 and**
**Tex. Bus. & Com. Code Ann. § 2.314**
**(On Behalf of the Nationwide Class or, in the Alternative,**
**the Connecticut and Texas Sub-Classes)**

91.    The Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

92.    Defendant is a merchant with respect to motor vehicles.

93.    The Class Vehicles were subject to implied warranties of merchantability running from the Defendant to the Plaintiffs and Class members.

94.    An implied warranty that the Class Vehicles were merchantable arose by operation of law as part of the sale or lease of the Class Vehicles.

95.    Defendant breached the implied warranty of merchantability in that the Class Vehicles suffer from the defects referenced herein and thus were not in merchantable condition when the Plaintiffs and class members purchased or leased the subject vehicles, or

17

at any time thereafter, and the Class Vehicles are unfit for the ordinary purposes for which such vehicles are used.

96.     As a result of Defendant's breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.  Additionally, as a result of the Shifter Defect, Plaintiffs and the Class members were harmed and suffered actual damages in that the Class Vehicles' Shifter Defect is substantially certain to manifest itself before and after the expiration of applicable warranties.

97.     Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendant as follows:

  a. An order certifying the proposed Class and Sub-Classes, designating Plaintiffs as named representatives of the Class, and designating the undersigned as Class Counsel;

  b. An order approving revocation of acceptance of the Class Vehicles;

  c. Money damages, in the form of a refund of the full contract price, including trade-in allowance, taxes, fees, insurance premiums, interest, and costs, and a refund of all payments made by Plaintiff and class members on the subject contracts;

  d. Equitable relief including, but not limited to, replacement of the Class Vehicles with new vehicles, or repair of the defective Class Vehicles with an extension of the express warranties and service contracts which are or

were applicable to the Class Vehicles, in the event that Plaintiffs are not found to be entitled to revocation;

e.  A declaration requiring Defendant to comply with the various provisions of the state and federal consumer protection statutes herein alleged and to make all the required disclosures;

f.  Incidental and consequential damages;

g.  Punitive damages;

h.  Reasonable attorneys' fees and costs;

i.  Pre-judgment and post-judgment interest, as provided by law;

j.  Plaintiffs demand that Defendant perform a recall, and repair all Class Vehicles; and

k.  Such other and further relief as this Court deems just and proper.

## TRIAL BY JURY DEMANDED ON ALL COUNTS

Dated: October 16, 2018

Respectfully submitted,

By:     */s/ Sergei Lemberg*
        Sergei Lemberg, Esq.
        43 Danbury Road
        Wilton, CT 06897
        Telephone: (203) 653-2250
        Facsimile: (203) 653-3424
        slemberg@lemberglaw.com

19

# EXHIBIT A

**#PIT5616A: VEHICLE DISPLAYS S...**

**#PIT5616A:** VEHICLE DISPLAYS SHIFT TO PARK MESSAGE ON DIC WHEN IN PARK. VEHICLE MAY NOT SHUT OFF WHEN PUT IN PARK OR MAY NOT START. (JUN 13, 2018)

Document ID# 5108506

**#PIT5616A:** VEHICLE DISPLAYS SHIFT TO PARK MESSAGE ON DIC WHEN IN PARK. VEHICLE MAY NOT SHUT OFF WHEN PUT IN PARK OR MAY NOT START. (JUN 13, 2018)

**Subject: Vehicle displays Shift to Park message on DIC when in Park. Vehicle may not shut off when put in Park or may not start.**



| Brand: | Model: | Model Year: | | VIN: | | Engine: | Transmission: |
|---|---|---|---|---|---|---|---|
| | | from | to | from | to | | |
| GMC | Acadia | 2017-2018 | | All | All | All | All |

| Involved Region or Country | North America |
|---|---|
| Condition | Vehicle displays Shift to Park message on DIC when in Park. Vehicle may not shut off when put in Park or may not start. |
| Cause | Unknown at this time. |

**Correction**

Please follow these steps and note which corrects the condition:

If vehicle is located in the Southeast Michigan area call TAC with Dealer name and location, phone and contact name.

If you can duplicate the concern perform the following checks, verify if the message reoccurs after each check, note which check corrects the condition and report to TAC:

1. Observe the shift boot for bunching at the front of the boot causing the shifter to not fully engage in Park position. Boot should be down in console, not up toward shift knob. If pushing it down when shifting to Park corrects the condition, replace the knob/boot assembly.
2. Observe the Park switch voltage when shifted into and out of Park. Watch for Open and Closed condition. If it does not change when moved to Park, verify again that the boot is not in the way, and if not, replace the shifter
3. Verify the connection at the shifter under the console is fully seated and locked, if not, disconnect and reconnect the connector.
4. Verify the shift cable adjustment is correct.

If you cannot duplicate the condition try to have the customer show you how it happens to them. If you can, observe:

1. The boot position and look for anything causing bunching at the front of the shifter.
2. Park switch voltage for movement when in and out of Park position.
3. Anything unique about how they park the vehicle and shift it into Park.
4. If the issue is duplicated, follow the checks above.
5. If the issue is not duplicated
   5.1. Verify the connection at the shifter under the console is fully seated and locked, disconnect and

apply dielectric lubricant, GM PN 12377900, in Canada use 10953529, at the body harness and control assembly and reconnect the connector.

  5.2. Verify the shift cable adjustment.

**Note:** Engineering is still investigating the root cause. DO NOT CALL GM Technical Assistant Center for an update on the PI. The PI will be updated to a bulletin once the final root is understood.

| Version | 2 |
|---|---|
| Modified | Created on May 29, 2018<br><br>6/13/2018 Updated Correction Information. |

GM bulletins are intended for use by professional technicians, NOT a "do-it-yourselfer". They are written to inform these technicians of conditions that may occur on some vehicles, or to provide information that could assist in the proper service of a vehicle. Properly trained technicians have the equipment, tools, safety instructions, and know-how to do a job properly and safely. If a condition is described, DO NOT assume that the bulletin applies to your vehicle, or that your vehicle will have that condition. See your GM dealer for information on whether your vehicle may benefit from the information.

 WE SUPPORT VOLUNTARY TECHNICIAN CERTIFICATION

Copyright General Motors Corporation.

Portions of materials contained herein are sourced from General Motors Inc., Co.

Copyright 2007 - 2018 Service Repair Solutions, Inc.